SO ORDERED: October 17, 2011.



James K. Coachys
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICHARD HALE ANDERSON, | ) | Case No. 10-93398 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| MARC E. BABBS and | ) | |
| DEANNA M. BABBS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 11-59004 |
| | ) | |
| RICHARD HALE ANDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

### AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court on Plaintiffs Marc E. Babbs and Deanna M. Babbs ("Plaintiffs") Motion for Summary Judgment against Debtor/Defendant Richard Hale Anderson ("Debtor"). Having reviewed the parties' respective filings, the Court hereby issues the following

Amended Findings of Fact and Conclusions of Law.[1]

### Findings of Fact

1. On August 22, 2000, the State of Indiana entered charges against Debtor for Theft, a Class D Felony, in the Harrison Circuit Court under Cause No. 31D01-0008-CF-661. The charging information states that Debtor "did knowingly or intentionally and exert unauthorized control over property of Deanna and Marc Babbs . . . with the intent to deprive Deanna and Marc Babbs of the value and use thereof."

2. The charges against Debtor arose from a contract between Debtor and Plaintiffs to construct improvements on Plaintiffs' property.

3. On August 10, 2001, a Judgment of Conviction for Theft, a Class D Felony, was entered against Debtor (the "Conviction"). The Judgment of Conviction was entered pursuant to a Plea Agreement executed by Debtor on that same date.

4. On June 2, 2002, Plaintiffs filed a civil suit under Cause No. 31C01-0206-PL-28 in the Harrison Circuit Court against Debtor pursuant to Indiana Code § 34-24-31-1.

5. On August 20, 2002, the state court entered a default judgment against Debtor in the amount of $37,611.00, plus statutory interest (the "Default Judgment").

6. Debtor did not appeal or otherwise challenge the Default Judgment.

7. On October 19, 2010, Debtor filed a Chapter 7 bankruptcy petition. Plaintiffs then filed a timely nondischaregability action against Debtor pursuant to 11 U.S.C. § 523(a)(4) and (a)(6).

---

[1] The Court issues these Amended Findings of Fact and Conclusions of Law to correct an error in the last sentence of Paragraph 2 of its original Conclusions of Law.

2

**Conclusions of Law**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2.  In their motion for summary judgment, Plaintiffs argue that Debtor's Conviction precludes him from relitigating whether his indebtedness to them arose from a "willful and malicious injury" for purposes of 11 U.S.C. § 523(a)(6). They further argue that the Default Judgment precludes Debtor from relitigating the amount of such indebtedness. For the reasons stated below, the Court agrees with the first of these arguments, but disagrees with the second.

3.  Under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

4.  A state court judgment is entitled to full faith and credit in bankruptcy proceedings.

3

28 U.S.C. § 1738; *Matter of Bulic,* 997 F.2d 299, 304 (7th Cir.1993). Thus, in applying the principles of *res judicata*, this Court looks to the substantive law of the state that issued the judgment, giving the state court judgment the same preclusive effect it would receive in the forum state. *See Scarborough v. Fischer (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 1999); *Bicknell v. Stanley*, 118 B.R. 652 (S.D.Ind.1990). There are two categories of *res judicata*: claim preclusion and issue preclusion. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Northern Indiana Pub. Serv. Co. v. Sharp*, 732 N.E.2d 848, 854 (Ind. Ct. App. 2000). Issue preclusion, also known as collateral estoppel, bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* Where issue preclusion applies, the previous judgment is conclusive only regarding those issues actually litigated and determined therein. *Id.*

5. Collateral estoppel can be used either offensively or defensively. Offensive collateral estoppel involves a situation where the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party. *Bartle v. Health Quest Realty VII,* 768 N.E.2d 912, 917 (Ind.Ct.App.2002), *trans. denied*. Defensive collateral estoppel involves a situation where a defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff had previously litigated and lost. *Id*. The present case involves the use of offensive collateral estoppel, as Plaintiffs seeks to prevent Debtor from relitigating whether the subject debt arose from a "willful and malicious injury" for purposes of § 523(a)(6).

6. The Indiana Supreme Court has adopted a two-prong test for the offensive use of collateral estoppel: (1) whether the party in the prior action had a full and fair opportunity to litigate

4

the issue; and (2) whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel. *Tofany v. N.B.S. Imaging Sys. Inc.,* 616 N.E.2d 1034, 1038 (Ind.1993). The offensive use of collateral estoppel has traditionally been viewed as somewhat more problematic than the defensive use of collateral estoppel. In *Tofany,* the Indiana Supreme Court discussed the factors to be considered in a court's determination of whether offensive collateral estoppel should be utilized:

> The trial court may consider privity, the defendant's incentive to litigate the prior action, the defendant's ability to defend the prior action, and the ability of the plaintiff to have joined the prior action. When considering the defendant's incentive to litigate, the trial court may consider the interest at stake for the defendant as well as how the defendant perceived this interest. For example, did the defendant have its most experienced litigator in the prior action or, instead, did the defendant rely on a less experienced litigator? Similarly, the trial court may consider whether the forum in which the action was defended allowed the defendant to participate in the full range of discovery. For example, was the forum inconvenient thus preventing the defendant from presenting witnesses or from taking depositions.

*Id.* at 1038-39. The Court added that these factors are not exhaustive; rather, they merely provide the framework for a court to utilize in its determinations. *Id.* at 1038.

7. Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To find that a debt is non-dischargeable under this section, the plaintiff must establish that: (1) it sustained an injury caused by the defendant; (2) the injury caused was willful; and (3) the injury caused was malicious. *First Weber Group, Inc. v. Horsfall,* 2011 WL 1628472, at 3 (Bankr.W.D.Wis.2011), *citing Birriel v. Odeh,* 431 B.R. 807, 817 (Bankr.N.D.Ill.2010); *see also In re Whiters,* 337 B.R. 326, 339 (Bankr.N.D.Ind.2006).

8. The United States Supreme Court has stated that the word "willful" in § 523(a)(6)

5

"modifies that word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 977,140 L.Ed.2d (1998) (emphasis in original).  Therefore, to establish that an injury was "willful," there must be proof that the defendants intended to cause the injury and not simply "the act itself." *Id.* at 61–62, 118 S.Ct. at 977.  The *Geiger* Court noted that to give the "willful and malicious" standard a broader interpretation would be to except from discharge injuries derived from "[e]very traffic accident stemming from an initial intentional act" and every "knowing breach of contract."  *Id.* at 62, 118 S.Ct. at 977.  The Court stated that such a broad interpretation would be in conflict with the policy that "exceptions to discharge 'should be confined to those plainly expressed.'" *Id.* (*quoting Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 49 L.Ed. 717 (1915)).

9. Maliciousness as used in § 523(a)(6) has been defined by the Seventh Circuit as a "conscious disregard of one's duties without just cause or excuse; it does not require ill-will or specific intent to do harm." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). As explained by the Bankruptcy Court for the Northern District of Illinois in an October 2010 opinion:

> The application of *Thirtyacre's* definition of maliciousness in every scenario is not readily apparent.  It has sometimes been difficult to gauge what types of nonaggressive conduct, *i.e.,* conduct that is not motivated by ill will, qualifies as being taken in "conscious disregard without just cause or excuse."  Indeed, it has been observed that it is necessary for courts to determine malice on the totality of the circumstances because "there has been surprisingly little judicial and scholarly commentary discussing the degree or nature of 'wrongfulness' that constitutes 'malice' under section 523(a)(6)."  *In re Bressler,* 387 B.R. 446, 455 (Bankr.S.D.N.Y.2008) (quoting *Viewer v. Jacobs* ( *In re Jacobs),* 381 B.R. 128, 139 (Bankr.E.D.Pa.2008)).  It can at least be said, however, that the "key to maliciousness under § 523(A)(6)" is "consciousness of wrongdoing." *See In re Young,* 428 B.R. 804, 818 (Bankr.N.D.Ind.2010); *In re McCarthy,* 179 B.R. 876, 880 (Bankr.N.D.Ill.1995).

6

*In re Vaccaro*, 2010 WL 4053914 (Bankr.N.D.Ill.2010).

10.    In the Court's opinion, a conviction under Indiana's theft statute satisfies the standard for "willful and malicious" injury. Per his guilty plea, Debtor admitted that he knowingly or intentionally exerted unauthorized control over Plaintiffs' property, with the intent to deprive them of its value. *See* IND. CODE § 34-43-4-2(a). The statute specifically requires that the actor intend to deprive someone of the value of his or her property. In other words, it requires an "intent to injure."

11.    Debtor agues that *Garoutte v. Damax, Inc.*, 400 B.R. 208 (S.D.Ind.2009) prevents the application of collateral estoppel in this case. The Court, however, finds *Garoutte* to be distinguishable.

12.    In *Garoutte*, the debtor had been found liable under Indiana's criminal conversion statute, Indiana Code § 35-43-4-3. *Id.* at 210. Under that statute, "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." *See id*. at 212. Upon the filing of debtor's bankruptcy petition, the judgment creditor initiated a § 523(a)(6) nondischargeabily action and moved for summary judgment, arguing that the criminal conversion judgment precluded the debtor from relitigating liability under § 523(a)(6). The bankruptcy court agreed and granted summary judgment in favor of the judgment creditor. *Id.* at 210.

13.    On appeal, the district court reversed. After setting forth *Geiger's* and *Thirtyacre's* respective definitions for "willful" and "malicious," as well as Indiana's standard for collateral estoppel, the court stated:

The criminal conversion determination could have relied upon the "knowingly"

7

> prong of criminal conversion, which requires only that the person committing conversion be "aware of a high probability that he is doing so." IND. CODE § 35–41–2–2(b). A judgment that Garoutte was aware that there was a high probability that he was converting Damax's property is not the same as a judgment that he willfully converted Damax's property, *i.e.,* that he converted it deliberately or intentionally. The difference between "knowingly" and "intentionally" may be subtle, but it exists and might even be decisive in this case.

*Id.* at 214. The court also indicated that it was not clear from the criminal conversion judgment that debtor's actions were necessarily "malicious" either. For these reasons, the court concluded that debtor was not estopped from litigating dischargeability under § 523(a)(6). *Id.*

14. As indicated above, Indiana's criminal conversion statute only requires that the actor "knowingly or intentionally exert unauthorized control" over the property of another. In additional to this requirement, the theft statute also requires that the actor "intend to deprive" the victim of the value of his or her property. In other words, while criminal conversion does not require an intentional injury, theft clearly does.

15. While a conviction for theft may be based on the "knowing" exercise of unauthorized control, in the Court's opinion, an act done knowingly with the subjective intent to cause harm satisfies *Geiger*.[2] In fact, if theft is not a "willful" injury, the Court is unsure what is.

16. For the same reason the Court concludes Debtor's theft conviction precludes relitigation of the "willful" prong of § 523(a)(6), so too does it preclude relitigation of the "malicious" prong. The court in *Birriel v. Odeh (In re Odeh)*, 431 B.R. 807 (Bankr.N.D.Ill.2010), observed:

---

[2] The *Geiger* court was primarily concerned with acts done recklessly or negligently that unintentionally lead to injury. It did not express similar concern over acts done knowingly with the intention to cause harm. *Geiger,* 523 U.S. at 61-62, 118 S.Ct. at 977 ("[T]he (a)(6) formulation triggers in the lawyer's mind the category of 'intentional torts' as distinguished from negligent or reckless torts.").

8

> An act taken with the intent to cause harm will almost always be inherently wrongful and without justification or excuse, and several courts have observed that the willfulness and maliciousness inquiries largely overlap. *See, e.g., Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton),* 942 F.2d 551, 554 (9th Cir.1991) (per curiam) ("[M]alice may be inferred from the nature of the wrongful act."); *Sparks v. Adams (In re Adams),* 147 B.R. 407, 412 n. 9 (Bankr.W.D.Mich.1992) (quoting Jeff Weinberg, Comment, *Accidental "Willful and Malicious Injury"*: *The Intoxicated Driver and Section 523(a)(6),* 1 Bankr.Dev. J. 135, 145 n. 48 (1984)) ("[T]he distinction between . . . 'willful' . . . and 'malicious' is unclear because malicious acts are necessarily willful. In other words, deciding whether an act is malicious must involve a determination of willfulness. Confusion arises as the cases refer to 'willful' and 'malicious' as two separate categories, ignoring the fact that malicious acts are a subset of willful acts."). Nevertheless, since the statute is phrased in the conjunctive, courts typically make separate findings for both willfulness and maliciousness, even if the findings are duplicative. *See, e.g., Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 711–12 (9th Cir.2008) (recognizing that "there may be some overlap between the test for 'willfulness' and the test for 'malice,' " but requiring bankruptcy court to make separate findings for each test on remand).

*Id.* at 817 n.9.

17. The Court agrees with the foregoing, at least as applied to the present case. As emphasized above, Indiana's theft statute requires that the actor intend to deprive someone of the value of his or her property. That act is inherently wrong such that it is "malicious."

18. There being no other factor under *Tofany* to prevent the application of collateral estoppel with respect to the Conviction, the Court concludes that Debtor is precluded from relitigating whether the subject debt arose from a willful and malicious injury. There is no evidence before the Court to suggest that his plea was not freely given, that its factual basis was insufficient or that Debtor was otherwise denied a full and fair opportunity to defend the criminal charges against him. Per the Judgment of Conviction, the state court specifically found "that the defendant is cognizant of the offense with which he is charged and the possible penalty therefore, that the plea is knowingly and voluntarily made, and that there is a factual basis for said plea . . . ."

19. Per their summary judgment motion, Plaintiffs also argue that Debtor should be collaterally estopped from challenging the amount of the subject debt as established by the Default Judgment. While the Court agrees that the Conviction is entitled to preclusive effect, it disagress that the Default Judgment is.

20. In their civil complaint against Debtor, Plaintiffs alleged that they paid Debtor $12,537.00 for construction work on their home that he began but never completed. The amount due under the parties contract was $12,920.00. Pursuant to Indiana Code 34-24-3-1, Plaintiffs asked for treble damages in the amount of $37,611.00, i.e., three times the $12,537.00 they paid Debtor; attorney fees of $5,000; and an unspecified amount of court costs.

21. Plaintiffs later obtained, upon their motion, the Default Judgment, which awards damages in the amount of $37,611.00, plus interest at the statutory rate, and costs in the amount $104.00. The evidence before the Court does not indicate whether the state court arrived at that award following a hearing on damages or whether the Court based the award solely on the allegations made in Plaintiffs' complaint.

22. Rule 55 of the Indiana Rules of Trial Procedure states in relevant part that "[i]f, in order to enable the court to enter [default] judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing or order such references as it deems necessary and proper . . . ."

23. As explained by the Indiana Court of Appeal in *Stewart v. Hicks*, 395 N.E.2d 308 (Ind.Ct.App.1979), default judgments actually consist of two stages in cases of this type: (1) the entry of default and (2) the entry of appropriate relief including damages. An entry of default is

10

interlocutory until it determines all the rights of the parties at which time it becomes a final judgment. *Id*. (citations omitted). Where the action is for a sum certain and liquidated, the final judgment can be entered and no hearing on damages would be necessary. *Id*. On the other hand, if the judgment is that the defendant is defaulted and the plaintiff should recover damages but the amount is unliquidated or not otherwise determined, the order is interlocutory and the "defaulted defendant may still appear and be heard as to the amount of damages resulting from such an interlocutory judgment." *See Schenkel v. Citizens State Bank* (1967), 140 Ind.App. 558, 224 N.E.2d 319, 320 (Ind.Ct.App. 1967).

24.     As indicated above, the evidence before the Court does not indicate whether the state court conducted a hearing on damages prior to entering the Default Judgment. Neither party makes mention of it in their recitation of the facts, nor does the Default Judgment itself suggest that an evidentiary hearing was conducted. It seems possible, then, and perhaps likely, that Plaintiffs simply tendered a proposed order to the state court in support of their motion for default and that the state court then entered it without further proceedings.

25.     That would not be problematic except for the fact that–at least in this Court's opinion–the damages sought by Plaintiffs were not for a "sum certain." The damages awarded by the Default Judgment were seemingly based on the amount Plaintiffs paid to Debtor after he began, but did not complete, construction on Plaintiffs' home–an amount alleged in their state court complaint. While that amount was presumably easily determined, that does not render it for a "sum certain," especially since it would appear that Debtor did perform some of the work contracted.

26.     Admittedly, the Court can find no Indiana cases that define the term, "sum certain." The First Circuit discussed the term as it is used in Federal Rule of Procedure 55(b)(1) in *KPS*

11

*&Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1 (1st Cir.2003).  Under that rule, "a claim is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of a defendant's default."  *Id.* at 19.  Typically, such situations include "actions on money judgment, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof."  *Id.* at 19-20 (citations omitted); *accord In re Catt*, 368 F.3d 789, 793 (7th Cir.2004)(example of sum certain is face amount of promissory note).  "Neither the fact that the complaint identifies a purported aggregate total, nor the fact that [an] affidavit attests to such a sum, automatically converts [a plaintiff's] claim into a 'sum certain.'"  *Id.* at 20 n.9.  "Simply because a plaintiff is certain of the sum does not make its damage claim a "sum certain" within the meaning of Rule 55(b)(1)."  *CSXT Intermodal, Inc. v. Mercury Cartage*, LLC, 271 F.R.C. 400, 401 (D.Me.2010).

27. Because the state court did not conduct an evidentiary hearing as required by the Indiana Rules of Trial Procedure and controlling Indiana case law, the Court cannot conclude that Debtor was afforded a "full and fair opportunity" to litigate the issue of damages.  For that reason, he is not estopped from litigating that issue before this Court for purposes of determining the amount of his otherwise nondischargeable debt to Plaintiffs.  However, the Court notes that there is some risk that Plaintiffs will be awarded an even greater amount than what was awarded to them by virtue of the Default Judgment.  For whatever reason, the Default Judgment did not include attorney fees, despite the fact that Plaintiffs are statutorily entitled to recover them.

28. Based on the foregoing, the Court grants Plaintiffs' summary judgment motion in part and denies it in part.  Plaintiffs are entitled to summary judgment in their favor and against Debtor to the extent their § 523(a)(6) claim relates to the Conviction in that Debtor is precluded from

12

relitigating whether the alleged injury was "willful and malicious." They are not entitled to summary judgment, however, to the extent their claim relates to the Default Judgment in that Debtor is entitled to relitigate the amount of his indebtedness to them. By separate notice, the Court will schedule an evidentiary hearing on damages[3] in the near future and enter additional findings of fact and conclusions of law and an appropriate Judgment after such hearing.

###

Distribution:

Joseph S. Elder II
Laura A. Harbison
Thomas J. Bird
UST

---

[3] The Court emphasizes that the hearing will address only damages. It is not an opportunity for Debtor to challenge his underlying liability to Plaintiffs for theft.